## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Shane Boda, | Case No. 19-cv-1437 (HB) |
| Plaintiff, | |
| v. | **ORDER ON MOTION FOR SUMMARY JUDGMENT** |
| Viant Crane Service, LLC, and Viant Crane, LLC, | |
| Defendants, | |
| and | |
| Viant Crane Service, LLC, | |
| Third Party Plaintiff, | |
| v. | |
| Brown Tank, LLC, | |
| Third Party Defendant. | |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendants Viant Crane Service, LLC, and

Viant Crane, LLC's Motion for Summary Judgment [ECF No. 78].  Defendants Viant

Crane Service, LLC and Viant Crane, LLC (collectively "Viant") move for summary

judgment on Plaintiff Shane Boda's claims for strict liability and negligence.  For the

reasons set forth below, the Court grants the motion.[1]

## I.   Factual Background

### A.   The Subject Crane, the ATBD, and Its Maintenance Record Prior to May 2015

Plaintiff Shane Boda was seriously injured while working at a construction site on June 5, 2015, when a cable snapped and the headache ball and spreader bar of a Grove Model RT700E crane, serial number 229685[2] ("Crane") fell on him. The Crane had been rented to Boda's employer, Third-Party Defendant Brown Tank, LLC, by Defendant Viant Crane Service ("Viant"). (Johnson Aff. Ex. E (Rental Agreement) [ECF No. 82 at 58[3]]; Johnson Aff. Ex. H. (Larson Dep. at 23) [ECF No. 82].)

The Crane was manufactured in 2008 (Alexejun Aff. Ex. K [ECF No. 77-11]) and sold to distributor American State Equipment Co. in or around March 2009 (Alexejun

---

[1]  The parties consented to the Court's jurisdiction for all purposes, including trial and entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  [ECF No. 91.]

[2]  While it is clear that the Crane bore serial number 229685, the record is somewhat confused as to whether the model was RT700E or an RT760E.  *Compare, e.g.,* Galarnyk Aff. Ex. 4 (photo of Crane model and serial number plate, showing serial number 229685 and model RT700E) [ECF No. 88 at 21], Johnson Aff. Ex. E (Brown Tank Rental Agreement identifying same serial and model numbers) [ECF No. 82 at 58], and Johnson Aff. Ex. C (Oct. 9. 2014 OSHA/ANSI Inspection identifying same serial and model numbers) [ECF No. 82 at 54], *with* Alberty Ex. A (Sales Order Agreement identifying same serial number but describing Crane as model RT760E) [ECF No. 87-1] and Johnson Aff. Ex. F (June 9, 2015 Work Order identifying same serial number and describing Crane as model RT760E) [ECF No. 82 at 65].  However, none of the parties suggest that the discrepancy—if any—made a difference in the safety features with which the Crane was equipped or the written instructions and warnings that accompanied it.

[3]  Unless otherwise indicated, page references to non-deposition exhibits attached to affidavits in support of the parties' briefs are to the page numbers assigned by the CM/ECF system, while page references to deposition excerpts are to the page numbers of the deposition transcript.

Aff. Ex. L [ECF No. 77-12].)  American State Equipment sold it new to Viant in December 2011.  (Alberty Ex. A [ECF No. 87-1].)  There is no dispute among the parties to this motion that at the time it was sold to Viant it had a functioning ATBD and lockout mechanism.  Viant, in turn, rented the Crane to companies such as Brown Tank.

One of the safety features of the Crane was an anti-two block device ("ATBD"), which is an "an electrical sensing device that is attached to the crane tip."  (Galarnyk Aff. ¶ 12 [ECF No. 88].[4])  The ATBD is "designed to prevent the headache ball from contacting the boom tip sheave."  If the headache ball contacts the boom tip, the cable can snap, causing the ball, cable, and load to fall.  (Galarnyk Aff. ¶ 12.)  The situation where the headache ball contacts the boom tip is known in the industry as "two-blocking."  (Galarnyk Aff. ¶ 12; *see also* Johnson Aff. Ex. A (Ericksen Dep. at 30–31, 33) [ECF No. 82].)

The ATBD consists of a metal box on the crane's boom tip that contains a switch or sensor connected to a thin cable.  (Johnson Aff. Ex. I (Harris Dep. at 29–30, 64–67, 93–94).)  The cable runs down and out of the box and connects to a chain holding a large weight that hangs below the ATBD, holding the switch or sensor in place.  (*Id.* at 20, 29–30, 64–67, 93–94.)  The weight has a hole through the middle through which the crane's main load-bearing cable runs.  (*Id.*)  The "headache ball" is attached to the end of the

---

[4] Boda submitted an affidavit from his expert Timothy Galarnyk with his opposition to the motion for summary judgment.  The Galarnyk Affidavit was identified as Exhibit M to the Affidavit of Benjamin Alberty [ECF No. 87], but was docketed separately [ECF No. 88].  Citations to specific paragraphs in the affidavit itself will refer to the paragraph number, while citations to attachments to the affidavit will refer to the page number assigned by ECF.

load-bearing cable. (*Id.*) As the crane winds up the cable, the headache ball rises until it catches the weight and begins to pull it up. (Harris Dep. at 29–30.) The rising weight slackens the pressure on the switch or sensor in the box, which then flips and sounds an audible alarm in the cab of the crane and shuts down or "locks out" all crane operations except the ability to lower the headache ball, preventing the ball from contacting the boom tip. (Ericksen Dep. at 11, 13–14; Larson Dep. at 56, 81; Harris Dep. at 28–30.) However, there was a "little red plastic piece" that could be manually inserted to override the ATB switch so it could not flip and lockout the crane controls, regardless of the position of the headache ball. (Harris Dep. at 27–30, 64–67, 93–94.)

Lawrence Ericksen worked for Viant as a mechanic in 2015. (Ericksen Dep. at 6.) As part of his knowledge and training, Ericksen was familiar with and repaired the ATBD systems on Viant's cranes when needed. (*Id.* at 7.) Ericksen's job included performing both pre-delivery and post-rental inspections of Viant's cranes. (*Id.* at 10.) A pre-delivery inspection consisted of both a visual and operational inspection. (*Id.*) As a matter of general practice, Ericksen would test the operation of the ATBD by extending the boom, running the cable down, then running it up until it contacted the anti-two block weight, and ensuring that it tripped the alarm and shut the cable off. (*Id.* at 11, 13.) Ericksen generally recorded the ATBD operational status on an inspection form. (*Id.* at 11.)

In February 2015, about 3½ months before the accident in which Boda was injured, the Crane was returned to Viant after it had been leased to another company. (*Id.* at 16.) A post-rental inspection was performed, and it was discovered that the ATBD

4

was missing.  (*Id.* at 17, 22–23.)  The resulting work order instructed, "Replace missing mirrors and a2b weight and switch."  (*Id.* at 16, 22.)  On February 20, 2015, Ericksen replaced the missing ATBD weight and switch.  (*Id.* at 17; Johnson Aff. Ex. D (Work Order 1060, Feb. 20, 2015) [ECF No. 82 at 57].)

Another Viant employee serviced the Crane on May 14, 2015, before it was delivered to Brown Tank, pursuant to a regularly-scheduled 250-hour service.  (Ericksen Dep. at 26–28; Johnson Aff. Ex. B (Work Order 1135, May 14, 2015) [ECF No. 82 at 52].)  Although Ericksen did not perform that service himself, he testified that the checkmark next to "Confirm LMI Function" on the work order reflected that the employee who performed the 250-hour service checked the operation of the ATBD as prescribed by the service manual and found it to be fully functional.  (Ericksen Dep. at 34–36; Work Order 1135, May 14, 2015; *see also* Alexejun Aff. Ex. T (Lemke Dep. at 58 [ECF No. 77-20]).)  The work order showed no repairs needed on the ATBD at that time.  (Ericksen Dep. at 27.)

### B.    Brown Tank Rents and Operates the Crane

Viant delivered the Crane to Brown Tank sometime between May 14 and May 19, 2015.[5]  Brown Tank crane operator Chris Larson testified that when a new crane arrived

---

[5] The record contains no testimony from anyone with direct knowledge of the date the Crane was delivered to Brown Tank.  An expert report filed with Grove's Motion for Summary Judgment refers to a document, which was not included with the report, indicating the Crane was delivered to Viant by Kivi Brothers Trucking on May 14, 2015.  (Alexejun Aff. Ex. F [ECF No. 77-6 at 9].)  The rental agreement between Viant and Brown Tank reflects the rental period for the Crane began on May 18.  Johnson Aff. Ex. E [ECF No. 82 at 58].)  Neither Larson nor Harris knew when the Crane was delivered or were present at the time of delivery. (Larson Dep. at 17 – 18, 34; Alberty Aff. Ex. I

at the construction site, he typically first checked to make sure the annual inspection was up-to-date. (Larson Dep. at 35–36.) He would next set up the crane in the operational mode he would be using and check the condition of various parts and systems. (*Id.* at 36.) Larson inspected the Crane when Brown Tank received it on May 19, 2015. (*Id.* at 37.) He walked around the Crane and visually inspected all the parts and systems. (*Id.* at 37–38.) He specifically checked the ATBD and found it operational. (*Id.* at 38.) He indicated on a Mobile Crane Inspection report that the condition of the anti-two block was "good" by marking an "X" in the corresponding box. (*Id.* at 38; Johnson Aff. Ex. G (Mobile Crane Inspection Report May 23, 2015) [ECF No. 82 at 67].) Larson also testified to his understanding of the function and purpose of the ATBD. In Larson's experience, when the headache ball contacts the ATBD, all crane functions cease except the one that allows the operator to release the block from the headache ball, also known as "cabling down." (Larson Dep. at 25.) An alarm or "beeping" noise also alerts the operator. (*Id.* at 57.)

Brown Tank safety manager Bill Storm confirmed that when a crane arrives at a job site, the crane operator tests the ATBD by "running the headache ball all the way up, and the function of the crane is shut down except for the ability to lower the headache ball back down." (Johnson Aff. Ex. J (Storm Dep. at 47) [ECF No. 82].) If the ATBD functions properly during testing, the operator marks an "X" in the corresponding box. (*Id.*) Storm testified that either Larson or Harris would have verified that the ATBD

───────────────

(Harris Dep. at 24–25, 26) [ECF No. 87-9].) Harris testified that when they arrived at the work site the Crane was already there. (Harris Dep. at 24–25, 26.)

functioned properly when it arrived at Brown Tank. (*Id.* at 51, 67.)

Larson operated the Crane at the Brown Tank construction site beginning on May 19, 2015. (Larson Dep. at 14.) He inspected the Crane each day and filled out the daily Mobile Crane Inspection report. (*Id.* at 9.) When Larson marked an "X" on the inspection report, that meant the ATBD was "in working order." (*Id.* at 15.) Larson tested the working condition of the ATBD each day by setting up the Crane for that day's functions, then slowly pulling the cable and headache ball up to the ATBD. (*Id.* at 25.) The Mobile Crane Inspection report indicated the condition of the ATBD was "good" on May 19, 20, 21, and 22, 2015. (*Id.* at 14–15.) Larson testified that he was the one who did the daily inspections all that week, but he does not know whether anyone else would have been operating the crane during the week. (*Id.* at 14.)

Brown Tank foreman Mike Harris also testified that "to the best of his knowledge" the ATBD was functioning properly when the Crane was delivered to the construction site. (Harris Dep. at 43.) Harris testified, however, that the daily crane inspection was "basically . . . a walk-around inspection." (*Id.* at 14, 23, 40, 55–56.) He recalled having operated the crane himself at some point before the day of Boda's injury. (*Id.* at 26.) When asked whether Larson was "the crane operator during those days" (referring to the days from May 19 through May 23), he testified that "[Larson] pretty much operated the crane," but was not asked and did not volunteer whether anyone else operated or could have operated the crane during that period. (*Id.* at 13; *see also id.* at 16 ([Larson] ran the crane most times.").)

### C.    The ATBD Malfunctions on May 22, 2015

On May 22, the cable holding the weight "snapped on the anti-two block device and slipped down the line and landed on top of the headache ball." (Larson Dep. at 16.) According to Larson, the cable and weight components of the ATBD "seemed to fall right off the – like, it just snapped on its own. There was no reason for why it should have come off there." (*Id.* at 16.) Larson had not seen that happen before in his twelve to thirteen years as a licensed crane operator. (*Id.* at 17.) On the May 23 Mobile Crane Inspection report, Larson put three question marks ("???") in the box for the condition of the ATBD. (Johnson Aff. Ex. G; Larson Dep. at 16.) Larson testified the three question marks meant he did not know yet whether the ATBD could be fixed. (Larson Dep. at 16.)

Harris was on the construction site on May 22 and saw Larson "driving the crane around the tank, and the headache ball started swinging . . . out of control a little bit, you know, bumping around, and it screwed the anti-two block up." (Harris Dep. at 15.) It appears Harris did not see the actual failure of the ATBD, but he surmised that while "whipping around," the headache ball "caught something and broke the anti-two block." (*Id.* at 15–16.) He agreed with one of the attorneys questioning him that "the headache ball was kind of flying around wildly" because of the manner in which Larson was operating the Crane. (*Id.* at 45.) Harris attributed the swinging headache ball to "[u]neven ground driving." (*Id.* at 45.) Other than this testimony, there was no other testimony from any witness, including Larson, about the nature of his operation of the Crane on May 22. Critically, there was no testimony from *any* witness about how the

8

Crane was operated on any of the days prior to May 22 or whether anyone other than Larson and Harris had access to it or operated it on any of those days.

After determining the Crane could not be operated due to the weight missing from the ATBD, either Harris or Larson inserted the red plastic piece to override the ATBD lockout function so that the Crane would operate without it. (*Id.* at 27–28, 30, 46–47, 53.) They did this because they wanted to keep working and finish the job. (*Id.* at 64, 67.) Harris knew operating the Crane with the ATBD overridden was not consistent with the operator's manual. (*Id.* at 48.) He knew there was an operator's manual with the Crane at the time of the accident, but testified that Brown Tank did not require him to review the manual before he operated the Crane. (*Id.* at 62–63.)

Larson continued to operate the Crane even though he knew the ATBD was a safety feature and was not functioning. (Larson Dep. at 38–39, 40.) Instead, Larson determined simply to watch the location of the headache ball in relation to the boom tip to prevent a two-block from occurring. (*Id.* at 21–22.) He knew a spotter or signal person could have been assigned that task but decided to watch for himself and "not let the view of the tip of the boom out of my sight." (*Id.* at 45, 69.) Larson knew that his method was not an approved way of operating the Crane and he had been trained that the Crane must not be operated without a functioning ATBD. (*Id.* at 46, 52, 69.)

Larson and Harris looked at the broken ATBD about a week after it broke and determined they could not fix it. (*Id.* at 20–21, 39, 40.) Neither Harris nor Larson told any other Brown Tank employees or Viant at that time that the ATBD had failed. (Larson Dep. at 26, 39; Harris Dep. at 30–31, 47.)

9

Larson operated the Crane without a functioning ATBD for about two weeks. (Larson Dep. at 46.)  On the Mobile Crane Inspection reports for the weeks ending May 30 and June 6, 2015, either Larson or Harris wrote "No Anti 2 Block on Line" (May 30) or "No Anti 2 Block" (June 6) (Larson Dep. at 12–13; Harris Dep. at 19; Johnson Aff. Ex. H (Mobile Crane Inspection Report May 30, 2015) [ECF No. 82 at 161]; Johnson Aff. Ex. H (Mobile Crane Inspection Report June 6, 2015) [ECF No. 82 at 162].)  But Larson also marked an "X" in the ATBD boxes for each day through Monday, June 1. (Larson Dep. at 12–13; Johnson Aff. Ex. H.)  Although Larson had testified earlier in his deposition that he used an "X" to signify that the ATBD was working properly, Larson later testified he used an "X" for the weeks ending May 30 and June 6 to signify merely that he had checked for the ATBD.  (Larson Dep. at 28.)  Harris testified that a walk-around inspection would have revealed that the ATBD was completely missing from the Crane.  (Harris Dep. at 56.)  There are no marks in any of the boxes for June 2, 3, 4, 5, or 6.  (Mobile Crane Inspection Report June 6, 2015.)

### D.     The Crane's Cable Breaks and the Ball and Spreader Bar Fall, Striking Boda

On June 5, 2015, Larson was operating the Crane at the Brown Tank construction site, and Boda and Jake Morris were working on the ground as the riggers for the Crane. (Larson Dep. at 9, 23.)  Larson noticed that Boda and Morris were not doing something correctly and "took his eyes off the crane tip to tell them what they needed to be doing, and then it was in that moment that the ball rode up into the – into the pulley of the crane, snapping the cable, and the ball and spreader bar contacted [Boda] on the way to the

10

ground." (*Id.* at 23.) There was nothing other than Larson's "visual awareness of the ball" to warn him that the ball was getting close to the tip of the boom. (*Id.* at 24.) Larson had no doubt that two-blocking had occurred. (*Id.* at 61.)

Larson testified that prior to the accident he was familiar with the warning decals in the cabs of cranes like the one at issue in this case, but did not rely on them to tell him how to operate the Crane or to tell him that the ATBD was a safety device. (*Id.* at 43.) He acknowledged seeing a warning label in the cab of this Crane "every time [he] open[ed] the door to climb into the operator cab" stating that the Crane must have a functional ATBD and control lockout system, that it must be tested daily, and that the operator must not pass loads or the boom over workers on the ground. (*Id.* at 71.) Specifically, the warning label, which was Exhibit 3 to Larson's deposition, provided as follows:

### TWO-BLOCKING HAZARD

> To avoid death or serious injury, keep load handling devices away from boom/jib tip when extending or lowering the boom and when hoisting up.
>
> This crane should have a functional ANTI-TWO BLOCK and CONTROL LOCK-OUT system.
> Test daily for proper operation.
>
> DO NOT PASS LOADS OR BOOM OVER GROUND PERSONNEL.

(Alexejun Aff. Ex. Y [ECF No. 77-25].)

Larson agreed he would have had the opportunity to read those warnings every time he got into the cab of a crane, perhaps "hundreds of times." (*Id.* at 67, 70, 72.) He

also agreed that he was acting in a manner inconsistent not only with those warnings but also with Brown Tank policy on the day of Boda's accident, and that if he had followed those warnings, the accident would not have happened.  (*Id.* at 69, 72–73.)  As for operator's manuals, he testified he was aware of manuals for these types of cranes, and had previously seen a manual for the Grove Model 760E, but could not recall whether he reviewed the manual that was with this particular Crane.  (*Id.* at 58–59, 61.)  He agreed when shown a copy of the manual for the Crane that it included the same warnings as those on the label in the cab.  (*Id.* at 71–72.)

Larson received a one-week suspension for using the Crane with a disabled ATBD.  (*Id.* at 74.)  Harris was also suspended for a week for knowing the ATBD was broken yet allowing Larson to operate the Crane.  (Harris Dep. at 38; Storm Dep. at 82.)  According to Brown Tank safety manager Bill Storm, at least two company policies were violated the day of the accident—the continued operation of the Crane without a functioning ATBD and the fact that the load was passed over Boda.  (Storm Dep. at 81.)  Storm testified that when Harris realized the ATBD was not functioning, he should have taken the Crane out of service immediately, shut down the job, and communicated with Viant to arrange for repairs. (*Id.* at 84.)

Brown Tank employee Mark Jacobson notified Storm of the accident shortly after it happened.  (Storm Dep. at 8.)  Storm and other Brown Tank management traveled to the job site to investigate.  An incident interview summary documented that Larson continued to "use crane with broken break point safety interlock" after the ATBD was broken, and that on June 5, 2015, "[w]hile booming upwards, [Larson] failed to release

12

cable, causing Crane Ball to logged [sic] in boom, snapping cable." (Johnson Aff. Ex. J. (Brown Tank Fairmont Incident Investigation Crew Interview) [ECF No. 82 at 491].)

Brown Tank first notified Viant of the broken ATBD on June 8, 2015. (Johnson Aff. Ex. F (Work Order June 9, 2015) [ECF No. 82 at 65].) However, Brown Tank did not notify Viant at the time that there had been an accident or injury involving the Crane. (*See* Larson Dep. at 27; Storm Dep. at 11–13.) Viant dispatched a mechanic from the Hayden-Murphy Equipment Company, Joel Tupy, to repair the Crane on June 9, 2015. (Alberty Aff. Ex. K. (Hayden-Murphy Service Report) [ECF No. 87-11].) Tupy replaced the ATB switch and the cable. (Alberty Aff. Ex. J. (Tupy Dep. at 13–14) [ECF No. 87-10].) He discarded the damaged ATBD. (*Id.* at 16.) He did not know there had been an accident involving the ATBD or that anyone had been injured. (*Id.* at 21.)

The Minnesota Occupational Safety and Health Division contacted Brown Tank on October 1, 2015, asking for cooperation in an investigation of the accident and Boda's injuries. (Johnson Aff. Ex. J. (MNOSHA Ltr. Oct. 1, 2015) [ECF No. 82 at 493].) Brown Tank responded via letter dated October 7, 2015. (Johnson Aff. Ex. J. (Brown Tank Ltr. Oct. 7, 2015) [ECF No. 82 at 496].) The letter stated, *inter alia*, that the "[c]rane received inspection once on site with no outstanding repairs," and "[w]hile telescoping the crane boom upwards the crane operator failed to release the cable causing crane ball to lodge in the boom, snapping the cable." (*Id.*) The OSHA investigator asked several follow-up questions, to which Brown Tank represented both that there was not an ATBD in place and that the ATBD was not functioning. (Johnson Aff. Ex. J. (Storm Email Oct. 14, 2015) [ECF No. 82 at 503].) Brown Tank also stated the cables were not

painted to provide a visual indication of when to stop the cable or boom, nor was a

spotter used.  (*Id.*)  Brown Tank was not cited by MNOSHA.  (Storm Dep. at 82.)[6]

## II.    Procedural History

Plaintiff initiated this suit in May 2019 against Viant, American State Equipment

Co., Inc. (American State), and Grove U.S. LLC (a.k.a. Manitowoc Crane Companies,

LLC, and Manitowoc Cranes, LLC).  (Compl. [ECF No. 1]; Grove Ans. at 1 [ECF No.

14].)  The Complaint alleged strict product liability, negligent failure to warn, negligent

provision of a defective product, and negligent failure to inspect the Crane.  (Compl.  ¶¶

18–27.)  American State cross-claimed against Viant and Grove for indemnity or

contribution.  (American State Ans. ¶ 28 [ECF No. 7].)  Viant filed a third-party

complaint alleging Plaintiff's damages were caused by Brown Tank, and seeking

indemnity and contribution from Brown Tank.  (Third-Party Compl. ¶¶ 5–8 [ECF No.

---

[6]  Viant also urges the Court to take into account Brown Tank's responses to Viant's requests for admission, in which Brown Tank admitted that the Crane had a fully functional ATBD when it was delivered to Brown Tank; the ATBD was fit for Brown Tank's intended use of the Crane; Larson inspected the Crane on the first day of operation and confirmed the ATBD was operating properly; the ATBD broke when Brown Tank was operating it; Brown Tank altered the Crane after the ATBD had broken in order to continue operating the Crane without a functioning ATBD; Brown Tank did not notify Viant that the ATBD had been broken until after Boda's injury; and Brown Tank continued to operate the Crane without a functioning ATBD.  (Johnson Suppl. Aff. Ex. K at 2–4 (Brown Tank's Responses to Third-Party Plaintiff's Request for Admissions) [ECF No. 94 at 4–6].)  These admissions may be offered, however, only against the party that made them, i.e., Brown Tank.  *See* Wright, Miller, & Marcus, Federal Practice and Procedure § 2264 at 380 (3d Ed. 2010) ("It is only when the admission is offered against the party who made it that it comes within the exception to the hearsay rule for admissions of a party opponent.").  But Brown Tank does not oppose Viant's motion, and Viant cites no authority for the proposition that the Court may consider Brown Tank's admissions as against Boda.  Accordingly, the Court disregards these admissions in recounting the facts for purposes of this motion.

14

32].)

Plaintiff stipulated to dismissal of American State, which in turn dismissed its claims against Viant and Grove.  (Stip. Dism. American State [ECF No. 36]; Order on Stip. Dism. [ECF No. 39].)  Grove and Viant both moved for summary judgment.  (Grove Mtn. Sum. Judg. [ECF No. 75]; Def. Mtn. Sum. Judg. [ECF No. 78].)  Brown Tank joined both Defendants' motions.  (Mem. Support Mtn. Sum. Judg. [ECF No. 92].)  Prior to oral argument on the pending motions, the parties stipulated to Grove's dismissal. (Stip. Dism. Grove [ECF No. 89]; Order Stip. Dism. Grove [ECF No. 95].)  Accordingly, the only dispositive motion now pending before the Court is Viant's Motion for Summary Judgment, in which Brown Tank joins.

## III.   The Opinions of Boda's Expert Timothy Galarnyk

Boda is the only party who offered expert opinion evidence in connection with this motion.  (Galarnyk Aff. [ECF No. 88].)  Galarnyk is a professional construction safety and risk management expert.  (*Id.* ¶ 3.)  He has been working in the construction industry since 1976 (*id.* ¶ 2) and has worked specifically with cranes since at least 1981.  (*Id.* ¶ 5.) He has been responsible for safety and compliance with safe operating practices of cranes, including cranes with ATBDs, and has had "extensive training in the configuration of, selection of, inspection of, operation of and the overall use of cranes since 1981," and has been involved in "the procurement, inspection, selection of, set-up, and supervising the operations of more than 150 cranes," including setting up and rigging loads and the use of headache balls and ATBDs.  (*Id.*   ¶¶ 5–8.)  He further states that he has "personally inspected, instructed operators in the use of and the functions of cranes

and anti-two block devices, and self-performed attaching anti-two block devices to cranes." (*Id.* ¶ 13.)  He has testified as an expert in construction safety and risk management more than 25 times in state and federal courts, although he does not indicate whether he has previously testified specifically in the area of crane safety.  (*Id.* ¶ 10.)[7]

Galarnyk attached to his affidavit two reports that he prepared relating to Boda's accident, and stated that the reports "provide [his] opinions in this case" (*id.* ¶ 15) and that he would testify to those opinions if called as a witness.  (*Id.* ¶ 32.)  The first report was dated December 13, 2017, before Boda filed this lawsuit.  (*Id.* at 15].)  Galarnyk asserted in that report that the Crane "did not have a functional anti-two block device on the boom at the time the crane was delivered" (*id.* at 16).  He stated that Larson had conducted daily inspections of the Crane and noted that the ATBD was not functional. (*Id.* at 17.)  Galarnyk opined that the Crane was not suitable for its intended purpose, that Viant delivered the Crane without a functioning ATBD, that Viant failed to inspect the Crane at the time it delivered it to Brown Tank, that it failed to warn Brown Tank that the Crane lacked a functioning ATBD, that it failed to post warning decals or other visible warnings on the Crane about the dangers of operating the Crane without a functioning ATBD, that Viant should have reviewed the safety features of the Crane with Larson when the Crane was initially delivered, and that by delivering a crane without a

---

[7] While Viant complains that Galarnyk's opinions are "speculative" (*see* Def.'s Reply at 5 [ECF No. 93]), Viant does not challenge Galarnyk's credentials as an expert in this field nor does Viant specifically move that Galarnyk's opinions be excluded under *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993).

functioning ATBD it "sent a clear message to Brown Tank" that the Crane could be safely operated without one.  (*Id.* at 18.)[8]

Galarnyk issued a second report on September 28, 2020, after discovery in this case was complete.  (*Id.* at 10.)  In his second report, he characterized the Brown Tank and MNOSHA records as showing that the Crane "did not have a functional *and securely installed* anti-two block device (ATBD) on the boom when the crane was delivered."  (*Id.* at 12 (emphasis added).)  Galarnyk stated that Viant had produced no records to the contrary, and specifically that there were no records showing that Viant had fully inspected the Crane upon delivery to Brown Tank.  (*Id.*)  The September 2020 report expresses essentially the same conclusions as the December 2017 report.  (*Id.* at 13–14.)

However, Galarnyk's affidavit submitted in connection with this motion went farther than the attached reports.  First, in addition to the opinions already noted, he cited OSHA regulation 29 C.F.R. § 1926.1412 as requiring regular inspections of cranes before initial use, upon assembly, and prior to each shift.  (*Id.* ¶ 16.)  Galarnyk suggests that this regulation placed on Viant the duty to conduct a recorded inspection of the Crane when it was delivered to the Brown Tank construction site, and that its failure to do so was therefore a violation of 29 C.F.R. § 1926.1412.  (*Id.* ¶ 20.)

Second, Galarnyk's affidavit states that he found "no evidence that this crane was

---

[8] Galarnyk's report also noted that there were no markings on the crane wire rope to identify to the operator when to stop the hoisting of the boom before the headache ball contacted the tip.  (Galarnyk Aff. at 17.)  He did not, however, identify this as a defect in the Crane or opine that the presence of such markings would have prevented this accident.

misused while in the possession of Brown Tank." (*Id.* ¶ 24.)  He opines that the type of use described by Larson and Harris as having occurred on May 22 shortly before the ATBD fell off was "normal and expected," as the Crane was intended for use on "rough terrain" where the headache ball could "swing freely."  (*Id.* ¶ 23.)  He described ATBDs as "heavy duty devices" that are specifically made for "rugged use" and "if properly manufactured and installed, will not just simply 'fall off'" even when used in a rough environment with the headache ball swinging freely.  (*Id.* ¶ 25.)  Based upon Larson's and Harris's testimony about the events of May 22, he opined that if the cable broke and the ATBD fell off under those conditions, it was "evidence of a defective attachment" or "deficient" ATBD. (*Id.* ¶¶ 25–28.)  "In my professional opinion this would not happen unless the installation or condition of the [ATBD] was defective."  (*Id.* ¶ 27.)  "If this device fell off during this routine and normal 'swinging', … this is evidence that the [ATBD] was not installed or functioning properly."  (*Id.* ¶ 28.)  In Galarnyk's opinion, the Crane "failed to meet the customs and practices in the construction industry as well as failed to meet the documentation regulations promulgated by OSHA and as such, this crane was not fit for its intended use."  (*Id.* ¶ 30.)

## IV.    Standard of Review

Summary judgment is proper when the record before the Court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When

18

deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor.  *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014).  The applicable substantive law determines which facts are material. *Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted.").

When asserting that a fact is genuinely disputed, the nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of that assertion.  *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A).  A nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted).

## V.    Strict Liability

Count 1 of Boda's Complaint, headed "Product Liability," alleges that "one or more of the Defendants" placed a defective, unreasonably dangerous product that was not fit for its intended use (the Crane) into the stream of commerce; that Boda would not have been injured but for one or more of the Defendants providing a defective and unreasonably dangerous product to Brown Tank; and that one or more of the Defendants therefore is strictly liable for Boda's injuries.  (Compl. ¶¶ 19–22 [ECF No. 1].)

Under Minnesota law, for a plaintiff to recover under the doctrine of strict liability for a product defect, he must establish through a preponderance of direct or

circumstantial evidence that "(1) the product was in fact in a defective condition, unreasonably dangerous for its intended use; (2) such defect existed when the product left defendant's control; and (3) the defect was the proximate cause of the injury sustained." *Lee v. Crookston Coca-Cola Bottling Co.*, 188 N.W.2d 426, 432, 34 (Minn. 1971). A product may be defective in design, manufacture, or through a failure to warn users about dangers of its use. *See Bilotta v. Kelley Co.*, 346 N.W.2d 616, 622 (Minn. 1984) (distinguishing elements of strict liability for the three forms of product defect). In a case alleging strict liability for a manufacturing defect (or, as here, a defect in the condition of the product when it left the lessor's control), the plaintiff need not show that the defendant failed to use reasonable care; rather "the defect is proved by focusing on the condition of the product," not on the conduct of the defendant. *Id.* Regardless of the theory of defect, however, "the mere fact of injury during use of the product usually is insufficient proof to show existence of a defect at the time defendant relinquished control." *Lee,* 188 N.W.2d at 432. In addition, "liability is not imposed where the injured party has not eliminated the probability that improper handling by intermediate parties might have caused the defect." *Id.*

Boda's Complaint alleges that "Defendants" delivered the Crane to Brown Tank "without an anti-two block and with no warning that the anti-two block was missing," and that the "missing anti-two block" caused the crane to malfunction, resulting in Boda's injuries. (Compl. ¶¶ 13, 15.) Boda now acknowledges there was an ATBD on the Crane when it was delivered, but argues in opposition to Viant's motion for summary judgment that the ATBD must have been defective when Viant delivered the Crane to

20

Brown Tank.  (Pl.'s Mem. Opp'n at 9–10.)  He posits that when Viant replaced the

ATBD on the Crane in February 2015, before it was rented to Brown Tank, it either

installed a defective ATBD or failed to install the ATBD correctly or attach it securely,

and that as a result, the ATBD fell off during normal use on May 22, 2015.  (*Id.*)

Because it fell off on May 22, it was not present and functioning on the Crane on June 5,

and its absence was a proximate cause of the accident that injured Boda.  (*Id.*)  Thus,

Boda argues, a defect that existed in the ATBD when the Crane left Viant's control

caused Boda's injuries.  (*Id.*)

The Complaint additionally alleges (although Boda did not discuss it in his

memorandum in response to this motion) that Viant is liable because it failed to warn

Brown Tank that the Crane lacked a functioning ATBD and/or about the dangers of

operating the Crane without an ATBD.  (Compl. ¶ 25.3.)

A.     **The Alleged Defect in the ATBD**

1.     **Whether a Reasonable Jury Could Find That When the Crane Left Viant's Control It Was in a Defective Condition Unreasonably Dangerous for Its Intended Use With Regard to the ATBD**

Because the ATBD was discarded and could not be examined to ascertain the

existence of a defect,[9] Boda relies primarily on the doctrine of res ipsa loquitur to support

---

[9] Boda suggests in his opposition memorandum that Viant spoliated evidence by discarding the ATBD and argued that his inability to identify an exact defect should not be held against him.  (Pl.'s Mem. Opp'n at 11.)  However, Boda's counsel conceded at the hearing that there is no evidence that at the time the Crane was repaired and the broken ATBD was discarded, Viant was on notice that anyone had been injured. *See, e.g.*, *Novak v. Wal-Mart Stores, Inc.*, No. CV 05-1755 (RLE), 2007 WL 9735943, at *10 (D. Minn. May 4, 2007) ("The obligation to preserve evidence begins when a party knows or

his claim that a defect existed in the ATBD at the time the Crane was delivered to Brown

Tank.  (Pl.'s Mem. Opp'n at 9–10.)  Res ipsa loquitur, which means "the thing speaks for

itself," has its origins in the law of negligence.  "In general the doctrine of res ipsa

loquitur permits an inference of negligence from the circumstances of an accident."

*Johnson v. W. Fargo Mfg. Co.*, 255 Minn. 19, 25 (1959).  Res ipsa loquitur in the

negligence context has three elements:

> (1) The event must be of a kind which ordinarily does not occur in the
> absence of someone's negligence;
>
> (2) It must be caused by an agency or instrumentality within the exclusive
> control of the defendant; and
>
> (3) It must not have been due to any voluntary action or contribution on the
> part of the plaintiff.

*Vargo-Schaper v. Weyerhaeuser Co.*, 619 F.3d 845, 850 (8th Cir. 2010) (citing *Warrick*

*v. Giron,* 290 N.W.2d 166, 169 (Minn. 1980)).

The Minnesota Supreme Court has held that the theory of res ipsa loquitur may

also be applied in a strict products liability case to allow a plaintiff to prevail in certain

circumstances where he cannot prove a specific defect.  *Lee*, 188 N.W.2d at 434.[10]

---

should have known that the evidence is relevant to future or current litigation.")  In the
absence of circumstances that would have led Viant reasonably to anticipate litigation
and consequently triggered an obligation on its part to retain the ATBD, the Court is
aware of no case law—and Boda cites none—to support the notion that the burden of
proof should be shifted to Viant simply because Boda himself was not responsible for the
loss of the evidence. *See, e.g.*, *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir.
1993) (discussing cases generally showing that sanctions for destruction of evidence are
imposed only when a party violates its obligation to preserve that evidence).

[10] Indeed, the Minnesota Supreme Court has explained that in products liability cases, the
distinction between theories of strict liability and negligence is typically insignificant,

Instead, a plaintiff "may rely upon circumstantial evidence from which it can reasonably be inferred that it is more probable than not that the product was defective when it left defendant's control."  *Id.*  However, the plaintiff must still introduce evidence from which a jury could reasonably find it more likely than not that the product was defective *when it left the defendant's control.  See, e.g., Cerepak v. Revlon, Inc.,* 200 N.W.2d 33 (Minn. 1972) (reversing a verdict for plaintiff and directing entry of judgment for defendant product manufacturer); *see also Trost v. Trek Bicycle Corp.,* 162 F.3d 1004, 1009 (8th Cir. 1998) (upholding summary judgment for the defendant product manufacturer and stating that in Minnesota, "res ipsa loquitur alone cannot make out a products liability case. …[Plaintiff's] account of the accident is not sufficient proof that the [product] was defective or that it caused the [accident].  [Plaintiff has] to introduce something more.") (internal quotes and citations omitted); *Webb v. Ethicon Endo-Surgery, Inc.,* Case No. 13-cv-1947(JRT/JJK) (Dec. 17, 2014), 2014 WL 7213202, at *5 ("[P]laintiffs must be able to show 'something more' than that an accident or injury occurred…. A plaintiff must also introduce some additional evidence supporting a finding that the product was defective when it left the [defendant] and that the defect caused the plaintiff's injury.") (internal quotes and citations omitted).  While a party need not "eliminate all possible causes" of a failure, "where lapse of time and substantial opportunity for mishandling of a product by third parties make it equally probable a defective condition developed after leaving the defendant's control, neither the principles

---

and in many cases "proof of a defect may simply be a substitute word for negligence." *Lee,* 188 N.W.2d at 432.

of res ipsa loquitur nor strict liability will support a finding of liability." *W. Sur. and Cas. Co. v. Gen. Electric Co.,* 433 N.W.2d 444, 449 (Minn. Ct. App. 1988) (upholding summary judgment for product manufacturer).

There are business records showing that a Viant employee inspected the Crane and the ATBD both visually and operationally on May 14, 2015, as a part of its 250-hour service inspection, and determined that the ATBD was functional and not in need of repair. Viant delivered the Crane to Brown Tank sometime between then and May 19, 2015. Brown Tank crane operator Larson testified that he visually inspected and tested the Crane and ATBD on that day and found they were fully operational, with no observable or functional defects. Larson operated the Crane on May 19, 20, 21, and 22, 2015, and noted the ATBD's condition as "good" each day on the Mobile Crane Inspection report. Viant argues, therefore, that there is no evidence from which a reasonable jury could conclude that the ATBD (and, by extension, the Crane) was in a defective condition, unreasonably dangerous for its intended use at the time the Crane was delivered to Brown Tank.[11]

Boda, on the other hand, argues there is evidence that Larson was operating the Crane within the range of normal and expected use on May 22 and the ATBD simply fell off the Crane for no reason. This, they contend, would allow a reasonable jury to infer the ATBD was defective when the Crane was delivered to Brown Tank on May 19.

---

[11] The parties do not dispute that the Crane was in a defective and unreasonably dangerous condition on the day of Boda's injury, *after* the ATBD fell off on May 22 and Harris or Larson overrode the lockout mechanism.

Specifically, Boda points to the opinion of his expert Galarnyk that the operation of the Crane on rough terrain with a swinging headache ball fell within normal and expected use, and the ATBD's malfunction under those circumstances was evidence that it had been defectively installed or attached before the Crane was delivered to Brown Tank.

The Court agrees that there are disputed issues of fact regarding precisely how Larson was operating the Crane on May 22, 2015—the day the ATBD fell off—and whether his manner of operation that day was within the range of normal and expected use for the Crane. But the inquiry does not end there. A plaintiff's evidence must "reasonably eliminate[] improper handling or use of the product by others" to permit a jury to reasonably infer that the product was defective at the time it left the defendant's control. *Daleiden v. Carborundum Co.*, 438 F.2d 1017, 1022 (8th Cir. 1971) (citing *Holkestad v. Coca-Cola Bottling Co. of Minn., Inc.*, 180 N.W.2d 860 (Minn. 1970)). *See also W. Sur. and Cas. Co.,* 433 N.W.2d at 449. The question is whether, when the evidence and the inferences that may be reasonably drawn from the evidence are viewed in the light most favorable to Boda, a jury could reasonably infer that the ATBD was defective four (or more) days earlier, at the time the Crane left Viant's control and was delivered to Brown Tank.

The Minnesota Supreme Court addressed the importance of evidence that the defect existed when the product left the seller's control in *Kerr v. Corning Glass Works,* 169 N.W.2d 587, 587–88 (Minn. 1969). In *Kerr*, the plaintiff sought to impose strict liability on the manufacturer of a glass baking dish that exploded. The plaintiff did not have evidence that the dish was defective when it left the defendant's possession but

proceeded on a theory of res ipsa loquitur.  *Id.* at 588.  The Minnesota Supreme Court declined to apply the doctrine because the dish had not been in the defendant's exclusive control between the time it was manufactured and purchased; rather, the dish had been displayed on a store shelf for months and could have been handled by employees and customers.  *Id.*  In addition, the dish had been used six or eight times after it had been purchased.  *Id.* at 589.  Further, even though the plaintiff's expert had examined the shards of broken glass and concluded there were defects, the expert did not establish that the defects existed before the dish left the defendant's possession.  *Id.*

Additionally, though not arising under Minnesota law, *Scott v. White Trucks* provides an instructive example of the need for that evidence in the context of an alleged manufacturing defect in a heavy vehicle.  699 F.2d 714, 717 (5th Cir. 1983).  The plaintiff was injured when the braking system failed in the semi-tractor-trailer he was driving.  *Id.* at 716.  The plaintiff presented no direct evidence of a manufacturing defect in the braking system components.  *Id.* at 719–21.  In the absence of direct evidence, the court considered whether the plaintiff had eliminated the possibility of damage to the brakes after the truck left the defendant's control, thus allowing a jury reasonably to infer that the system must have been defective when it left the manufacturer.  *Id.* at 721.  It held that the defendant was entitled to summary judgment, in part because the evidence failed to show the means or manner by which multiple intermediate owners maintained the braking system in the two years between when the truck left defendant's control and the accident.  *Id.* at 721-724.  The court held the plaintiff could not rely on res ipsa loquitur without introducing evidence tending to make it improbable that those

26

intermediaries had damaged the brakes.  *Id.* at 724.

Here, the time frame involved is significantly shorter than in *Kerr* and *Scott*. Nevertheless, as in those cases, Boda's argument and Galarnyk's opinion that the Crane must have been defective when it first arrived at Brown Tank because Larson's manner of operating the Crane *on May 22* should not have caused a properly installed ATBD to fall off, ignores an important gap in the evidence needed to support the application of the doctrine of res ipsa loquitur: there is no evidence whatsoever about how the Crane was operated, used, maintained, or handled, by Larson or by others, while it was in Brown Tank's hands *prior to May 22*.  Consequently, there is no basis upon which Galarnyk or a jury could assess whether any such operation or handling departed from normal and expected use and could account for the failure of the ATBD on May 22.  Indeed, there is no evidence excluding access to or use of the Crane by persons other than Harris and Larson, including before they came onto the construction site and found the Crane there. If, as Boda argues, the evidence that Larson observed no defects or functional problems when he operated the Crane prior to May 22 does not tend to prove the *absence* of a latent defect at the time of delivery, neither does it tend to eliminate the possibility that the Crane was mishandled or misused after deliver and prior to May 22 in a manner that damaged the ATBD and led to its failure.  True, there is no affirmative evidence of product misuse during that period, but where a plaintiff cannot produce evidence of a specific defect at the time of delivery and instead relies on the doctrine of res ipsa loquitur, he bears the burden to "reasonably eliminate[] improper handling or misuse" if the jury is to infer the presence of a defect at the time of delivery.  *Daleiden*, 438 F.2d at

27

1022.  The burden is not on the defendant to prove there was no defect, or to affirmatively prove mishandling occurred after delivery.[12]

Accordingly, the Court finds there is no genuine issue of material fact as to the existence of a defective and unreasonably dangerous condition in the Crane with respect to the ATBD at the time it left Viant's control, and therefore Viant is entitled to summary judgment on this element of Boda's strict product liability claim.

### 2. Whether the Alleged Defect in the ATBD was the Proximate Cause of Boda's Injuries

Viant argues it is entitled to summary judgment for the independent reason that even if the Crane was in a defective and unreasonably dangerous condition with regard to the ATBD at the time it was delivered to Brown Tank, and even if that defective condition led to the failure of the ATBD on May 22, the defect was not the proximate cause of the accident that caused Boda's injuries two weeks later.  (Mem. Supp. Mot. Sum. Judg. at 17 [ECF No. 80].)  Although the Court has already concluded that Viant is entitled to summary judgment on the ground that there is no genuine issue of material fact as to the existence of the defect at the time of delivery, for the sake of completeness, the Court will turn next to the element of proximate cause.

"Generally, proximate cause is a question of fact for the jury; however, where reasonable minds can arrive at only one conclusion, proximate cause is a question of

---

[12] Galarnyk also opines that Viant violated OSHA regulations, 29 C.F.R. § 1926.1412, in failing to inspect the Crane at the time of delivery to confirm the absence of any problems with the ATBD.   The Court will address that argument *infra* in connection with Boda's negligence claims.

law." *Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn. 1995). "There must . . . be a showing that the [defect] was a substantial factor in bringing about the injury." *Id.* at 401 (quotation omitted). Stated differently, "Minnesota courts look to whether an injury 'follows in an unbroken sequence, without an intervening efficient cause, from the original [defect].'" *Green Plains Otter Tail, LLC v. Pro-Env't, Inc.*, 953 F.3d 541, 547 (8th Cir. 2020), *citing Dellwo v. Pearson*, 107 N.W.2d 859, 861 (Minn. 1961).

A defendant is liable for all injuries proximately caused by its defective product, except when a superseding cause breaks the chain of causation. *Id; Canada ex rel. Landy v. McCarthy*, 567 N.W.2d 496, 507 (Minn. 1997). The defendant bears the burden to prove a superseding cause defense. *See Bursch v. Beardsley & Piper, a Div. of Pettibone Corp.*, 971 F.2d 108, 112 (8th Cir. 1992) (affirming denial of a superseding-cause jury instruction requested by the defendant when defendant failed to bring forth evidence to support the defense under Minnesota law). An intervening cause becomes a liability-defeating, superseding cause when (1) its harmful effects occurred after the original defect; (2) it was not brought about by the original defect; (3) it actively worked to bring about a result which would not otherwise have followed from the original defect; and (4) it was not reasonably foreseeable by the original wrongdoer. *Canada*, 567 N.W.2d at 507.

Boda was injured on June 5, 2015, two weeks after the ATBD weight fell off the Crane. There is no dispute that if the ATBD had been in place and working on June 5, the accident would not have occurred. Therefore, if the evidence were such that a jury could reasonably find the failure of the ATBD on May 22 was attributable to a defect that

existed when the Crane was delivered, a jury could also reasonably find that defect was a proximate cause of the accident that injured Boda.  The question, therefore, is whether Larson's and Harris's actions after the ATBD malfunctioned constituted a superseding cause or, more to the point, whether reasonable jurors could conclude on this record that they were *not* a superseding cause.

Larson knew on May 22 that the ATBD was non-functional when the weight fell from the ATBD box, because the Crane ceased functioning and the ATBD switch could not be deactivated, so the Crane's controls could not be released from the lockout.  But either Harris, or Larson with Harris's knowledge and blessing, overrode the ATBD lockout on the Crane so that Larson could continue using the Crane with no safety device in place to prevent the two-blocking event two weeks later that resulted in Boda's injuries.  Thus, their actions were an intervening cause of Boda's injury and satisfy the first element of a superseding cause, as they occurred after the allegedly defective ATBD "fell off."

Their actions also satisfy the third element.  But for their overriding of the lockout and their continued operation of the Crane, the failure of the ATBD would have prevented the Crane from being operated at all, thus avoiding the accident that resulted in Boda's injuries.

But there is a fact question regarding the other two elements that the Court finds is sufficient to defeat Viant's motion for summary judgment on causation.  The second element required to find a superseding cause is that the intervening cause not have been brought about by the alleged defect.  Here, if the ATBD had not failed, Larson and Harris

would have had no reason to override the lockout and operate the Crane without it.  On the other hand, these experienced crane operators knew that safety, company policy, and product warnings all instructed against overriding the lockout they knew to be an important safety feature of the Crane, and they knew they should not operate the Crane without a functioning ATBD.  On these facts, a jury could reasonably find either way on the second element, so it cannot be resolved on summary judgment.

As for the fourth element, neither party presented evidence or argument on the issue of foreseeability, but the foreseeability of an intervening cause is generally a fact question for the jury unless the undisputed facts, taken together, show the defect was too attenuated from the intervening cause.  *See Green Plains Otter Tail*, 953 F.3d at 547; *Montemayor v. Sebright Prod., Inc.*, 898 N.W.2d 623, 630–31 (Minn. 2017).  "If reasonable minds could disagree as to whether [the purchaser's] negligence was reasonably foreseeable to [the manufacturer], summary judgment must be denied." *Green Plains Otter Tail*, 953 F.3d at 547 (*quoting Montemayor*, 898 N.W.2d at 632) (alteration in original).

Here, the question is whether a jury could find that Viant reasonably could have foreseen that a user would override the lockout and use the Crane without an ATBD, and pass the boom over ground personnel such that they might be injured by falling debris. An intervening cause is not a superseding cause that absolves the defendant of liability if the defendant reasonably could have foreseen the intervening act.  *Bilotta*, 346 N.W.2d at 625.  That the intervening act was negligent does not in and of itself mean it was not foreseeable.  *Montemayor,* 898 N.W.2d at 630.

31

The Minnesota Supreme Court has found judgment as a matter of law inappropriate on issues of superseding cause in a variety of product liability cases. In *Montemayor,* the court reversed a district court's grant of summary judgment for the defendant manufacturer on the question of whether the employer's negligent failure to use appropriate lockout/tagout procedures for an extruder was a superseding cause of the plaintiff's injury. 898 N.W.2d at 631-33. The court reasoned that foreseeability was a disputed issue of fact where the defendant identified the risks of servicing the machine without the safety procedures and warned against doing so in the manual and on-product labels, and an expert opined the risk was reasonably foreseeable. *Id.* at 626, 31–32.

The Minnesota Supreme Court has also upheld verdicts in which juries have found it was foreseeable that users would fail to follow safety instructions or use safety equipment. *See Germann v. F.L. Smithe Mach Co.*, 395 N.W.2d 922, 923-24 (Minn. 1986) (affirming jury verdict for plaintiff on ground that manufacturer could have reasonably foreseen the removal of and failure to reattach a safety bar from a hydraulic press); *Parks v. Allis-Chalmers Corp.*, 289 N.W.2d 456, 460 (Minn. 1979) (affirming a jury finding that it was reasonably foreseeable that some users would ignore the manufacturer's warning against unclogging a harvester without first disconnecting the power, when leaving the device powered "would furnish mechanical assistance, saving time and effort").

Similarly, in *Green Plains Otter Tail*, the Eighth Circuit, applying Minnesota law, reversed a district court decision that the plaintiff's failure to perform maintenance on its safety system was a superseding cause of the explosion which damaged plaintiff's

32

facility.  953 F.3d at 547.  The court concluded that "[r]easonable minds could disagree whether [the defendant] could foresee that a company would view the 'suggested' maintenance as mandatory, or would ignore it due to the effort required [to perform the maintenance]."  *Id.* at 548.  And in *Bursch*, the Eighth Circuit upheld a district court's denial of a jury instruction on superseding cause in a case involving a plaintiff who was injured when he reached inside a power-connected machine.  971 F.2d at 112.  The court held the manufacturer could have foreseen the employer's inadequate training of the plaintiff and maintenance of the machine, and a co-worker's activation of the wrong switch that increased the injury.  *Id.* at 112–13.

For similar reasons, the facts here preclude a finding that Harris's and Larson's conduct was not foreseeable as a matter of law.  Reasonable jurors could disagree on whether it was reasonably foreseeable to Viant that if the ATBD failed, an operator or foreman might, as Larson and Harris did, defer repairs and instead take the relatively simple step of inserting the available plastic piece to bypass the ATBD lockout, enabling them to operate the Crane so that the job did not have to be interrupted.

It is a closer question whether a jury could find it foreseeable that a user would also fail to engage a separate spotter for the purpose of keeping an eye on the proximity of the headache ball to the boom tip, and then pass the load over a worker on the ground.  Again, however, with the burden on Viant to prove a superseding cause and in the absence of evidence on the issue of foreseeability, this too must be left for resolution by the jury.

Accordingly, the Court finds that if there were a triable issue of fact as to the

existence of a defect in the Crane's ATBD when it left Viant's control (which the Court

has determined there is not), summary judgment in favor of Viant would not be

appropriate on the issue of proximate cause.

B.     **Alleged Failure to Warn**

1.     **Whether the Crane Was in a Defective Condition Unreasonably Dangerous for Its Intended Use With Regard to Its Warnings at the Time It Left Viant's Control**

The Court next turns to whether Viant is entitled to summary judgment on Boda's

failure-to-warn claim.  Boda alleged in his Complaint that Viant was negligent in failing

to warn Brown Tank of the dangerous condition created by a missing ATBD.  (Compl. ¶

25.3.)  He did not include failure-to-warn as a basis for his strict-liability claim in his

Complaint or in his memorandum in opposition to this motion.  But as the Minnesota

Supreme Court has observed, "[a]s a practical matter, where the strict liability claim is

based on . . . failure to warn . . ., there is essentially no difference between strict liability

and negligence."  *Holm v. Sponco Mfg., Inc.*, 324 N.W.2d 207, 215 (Minn. 1982).

Therefore, the particular theory argued is immaterial to the Court's analysis of this claim.

Under Minnesota law, "[a] failure-to-warn claim requires that: (1) [defendant] had

a duty to warn; (2) [defendant] breached that duty by providing an inadequate warning;

and (3) [defendant's] inadequate warning caused [plaintiff's] damages."  *Green Plains*

*Otter Tail*, 953 F.3d at 548.  A duty to warn arises "[w]hen a manufacturer or seller

knows, or should anticipate, that a product might be used in a manner that will increase

the risk of injury, and the risk is not one normally comprehended by the user."  *Marcon v.*

*Kmart Corp.*, 573 N.W.2d 728, 732 (Minn. Ct. App. 1998); *see also Montemayor*, 898

34

N.W.2d at 629.

Here, Boda identifies two types of risk that he claims Viant should have but failed to warn against. First, Boda argues Viant failed to warn that the Crane had a defective ATBD at the time of delivery. (Galarnyk Aff. at 13.) This claim fails, however, because the Court has already found there is insufficient evidence upon which a jury could reasonably find that the ATBD was defective at the time of delivery.

Second, Boda argues there were inadequate warnings about the dangers of using the Crane without a functioning ATBD. (Galarnyk Aff. at 13–14.) Viant argues it is entitled to summary judgment on this claim on the ground that the crane operators were "sophisticated users" who already knew of those dangers, and therefore Viant had no duty to warn them of those dangers. (Mem. Supp. Mot. Sum. Judg. at 13–16).

The Minnesota Supreme Court has recognized several overlapping affirmative defenses that "could obviate or discharge the duty of a supplier to warn." *Gray v. Badger Min. Corp.*, 676 N.W.2d 268, 275 (Minn. 2004). One of those defenses is the "sophisticated user" defense. *Id.* "Under the sophisticated user defense, a supplier has no duty to warn the ultimate user if it has reason to believe that the user will realize [the product's] dangerous condition." *Id.* at 276. As the court explained,

> [O]ne with a duty to warn is not liable for failing to warn a party of facts that the party already knew. The theory of this exception is that a failure to warn a party of a danger of which it was independently aware cannot be the proximate cause of injury resulting from that danger, since presumably the party would not have acted differently even if warned.

*Id.* (quoting *Hall v. Ashland Oil,* 625 F.Supp. 1515, 1520 (D. Conn. 1986)).

As the court in *Gray* noted, "these defenses do not alter common law principles of

negligence and causation but instead describe the application of those principles to various sets of common fact patterns." *Id.* at 275. Thus, the "sophisticated user" defense can to some extent be understood as a more precise application of the second part of the conditions that must be present to give rise to a duty to warn— that "the risk is not one normally comprehended by the user." *Marcon*, 573 N.W.2d at 732.

Here, the evidence shows conclusively that Larson and Harris, individually, knew the dangers of operating a crane without a functioning ATBD. But the sophisticated user defense has to do with whether there is a duty to warn in the first instance, and requires evidence about what the supplier knew or had reason to know about users' knowledge of the risks. The record before the Court does not contain sufficient evidence to conclude as a matter of law that crane operators generally can be expected to have such knowledge of the risks of operating a crane without an ATBD that a crane supplier could reasonably conclude there is *no* duty to warn. Indeed, the presence of warnings on this subject in the manual and labels accompanying the subject Crane would suggest that the manufacturer, at least, did not assume that crane operators would already know what they needed to know on this subject. The Court cannot conclude, therefore, that Viant is entitled to summary judgment on the theory that it had no duty to provide adequate warnings about the dangers of operating the Crane without a functioning ATBD.

But the Court does find that Viant is entitled to summary judgment on failure to warn because a reasonable jury could not find on these facts that the warnings provided were not adequate. First, it is undisputed that the dangers of operating the Crane without a functioning ATBD *were* addressed both in labels in the cab and in the operator's

manual that was provided with the Crane. "To be legally adequate, a warning should (1) attract the attention of those that the product could harm; (2) explain the mechanism and mode of injury; and (3) provide instructions on ways to safely use the product to avoid injury." *Gray v. Badger Min. Corp.*, 676 N.W.2d 268, 274 (Minn. 2004). But Boda has pointed to no specific deficiency in the warnings that were provided, let alone explained how different or additional warnings would have made the Crane safer. Neither Boda nor Galarnyk analyzed the warning labels that were on the Crane or the warnings and instructions in the operator's manual, identified any relevant risk that was not set forth in those warnings, or described any changes to the warnings that was necessary to make them legally sufficient, let alone offered evidence in support of such a claim. *See Green Plains Otter Tail*, 953 F.3d at 549 (countering plaintiff's vague claim of inadequate warnings by examining the language, design, and positioning of the provided warnings and noting that the hazards complained of by plaintiff were described in those warnings); *Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1157 (D. Minn. 2011) ("Under Minnesota law, if a plaintiff's proposed warning would not have changed anyone's behavior, a product cannot be defective for lacking that warning.").

As these decisions make evident, to survive summary judgment on a theory of failure to warn, the plaintiff must show more than that a user did not comply with the warnings that were provided and that an accident ensued. The Court finds Boda has failed to show that there is a genuine issue of material fact with regard to the adequacy of the warnings provided with the Crane, and for that reason alone, Viant is entitled to summary judgment on his failure to warn claim.

37

### 2. Whether Any Defects in the Warnings Were a Proximate Cause of Boda's Injuries

Relatedly, even if Boda had adduced evidence of defects in the warnings provided with the Crane, there is no evidence upon which a jury could conclude that those defects proximately caused the accident that injured Boda.  "There must be a causal relationship between the failure to warn and the injury."  *Green Plains Otter Tail*, 953 F.3d at 549. Courts generally find that the chain of causation has been broken when the user either did not read or ignored warnings that would have prevented the injury if heeded, and there is no evidence the user would have heeded additional or different warnings.  *See, e.g., Balder v. Haley*, 399 N.W.2d 77, 82 (Minn. 1987) (finding no causation when plaintiffs ignored verbal warnings and there was "no reason to believe that a warning label would have done anything more to impress [them]"); *Green Plains Otter Tail,* 953 F.3d at 548 (upholding a grant of summary judgment for defendant when additional warnings would not have changed the plaintiff's behavior).  Such is the case here.

Both Larson and Harris testified they knew the Crane should not be operated without a functioning ATBD.  Larson acknowledged there were warning labels on the Crane and warnings in the operator's manual that told of the dangers associated with operating the Crane without a functioning ATBD.  Larson testified he knew of those dangers even before he operated this Crane and did not need the warnings to tell him of those dangers.  There is no evidence that Larson or Harris would have heeded different or additional warnings.

The evidence is uncontroverted that on the day of the accident, Larson and his

supervisor knew the ATBD was bypassed, knew that as a result it would not serve its function of preventing the headache ball from contacting the boom tip, knew that as a matter of safety and as a matter of company policy they should not operate the Crane in that condition, deliberately overrode the safety feature that would have prevented operating the Crane in that condition, knew that they should at the very least have deployed a spotter to watch the headache ball's proximity to the boom tip, knew the load should not be positioned over someone on the ground, and knew that if the ball contacted the boom tip, the cable could break and the load could fall and injure the person below it. There is simply no evidence from which a reasonable jury could find that any defect in Viant's warnings left Larson and Harris unaware of the risks of their use of the Crane without an ATBD, or that a change in those warnings would have prevented this injury.

Accordingly, Viant is entitled to summary judgment on Boda's claim of failure to warn, whether viewed as a claim sounding in strict liability or in negligence.

## VI.    Negligence

Boda alleged in his Complaint that Viant was negligent by (1) failing to provide Brown Tank with reasonably safe equipment, (2) failing to inspect the crane before delivering it to Brown Tank, (3) failing to warn Brown Tank of the dangerous condition created by the missing ATBD, and (4) providing a defective and unreasonably dangerous product to Brown Tank.  (Compl. ¶ 25.)

As previously noted, it does not appear that Minnesota law recognizes an independent cause of action for negligent product defect or negligent failure to warn, separate and apart from a claim advanced under the doctrine of strict liability.  But in any

event, Boda's negligence claims fail for the same reason that his strict liability claims

fail: regardless of whether he pleads under strict liability or under negligence, he must

prove there was a defect in the Crane that rendered it unreasonably dangerous for its

intended use, that the defect existed when the Crane left Viant's control, and that the

defect proximately caused Boda's injuries. *Kapps*, 813 F. Supp. 2d at 1146–47 (citing

*Bilotta*, 346 N.W.2d at 621–23); *Lee,* 188 N.W.2d at 434. The inability of Boda to

reasonably eliminate the possibility that improper handling after the Crane left Viant's

control caused the ATBD to fail is equally fatal to his claim for negligence. And Boda's

claims for failure to warn suffer from the same deficiencies whether pleaded in strict

liability or negligence.

The only possible theory of liability sounding in negligence that has not already

been addressed is Galarnyk's suggestion that an OSHA regulation, 29 C.F.R.

§ 1926.1412, placed on Viant the duty to conduct a recorded, documented inspection of

the Crane when it was delivered to the Brown Tank construction site, and that Viant's

failure to do so was a violation of the regulation. (Galarnyk Aff. ¶¶ 16, 20.) This theory

fails for at least two reasons. First, it is irrelevant if there is no evidence from which a

jury could conclude there was a defect at the time of delivery in the first place. Second,

the Occupational Safety and Health Act of 1970, and the regulations promulgated under

authority of the act, apply to *employers.* 29 U.S.C. § 654 provides:

> Each employer—
> (1) shall furnish to each of his employees employment and a place of
>     employment which are free from recognized hazards that are causing or
>     are likely to cause death or serious physical harm to his employees;
> (2) shall comply with occupational safety and health standards promulgated

under this chapter.

29 U.S.C. § 654(a).  Moreover, the language of the regulation upon which Galarnyk

relies does not refer to the supplier or the supplier's obligations with regard to a crane,

but simply requires a "qualified person" to inspect a crane "after assembly" and a

"competent person" to inspect it before each shift.  29 C.F.R. § 1926.1412(c)(1), (d)(1)

(2021).  In short, nothing in the regulation cited by Galarnyk can fairly be interpreted to

impose upon Viant a legal obligation with regard to inspection of the Crane upon delivery

to Brown Tank's job site.

Consequently, the Court concludes that Viant is also entitled to summary

judgment on Boda's negligence claims.

Accordingly, based on all the files, records, and proceedings herein, **IT IS

HEREBY ORDERED** that Defendants Viant Crane Service, LLC, and Viant Crane,

LLC's Motion for Summary Judgment [ECF No. 78] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 28, 2021

*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge